OPINION
{¶ 1} Defendant-appellant Rolando Espinoza appeals from his convictions and sentences for Solicitation and for Loitering. Espinoza contends that his convictions are not supported by the evidence, and are against the manifest weight of the evidence. We conclude that there is evidence in the record from which the trial court, as the finder *Page 2 
of fact, could reasonably have found that before Espinoza and an undercover police officer reached any agreement concerning the performance of sexual acts, Espinoza proposed that the police officer perform sexual acts for money. This finding supports Espinoza's convictions for Solicitation and Loitering.
 {¶ 2} Espinoza further contends that the trial court erred "by relying on facts not in evidence and in making inferences not supported by the evidence." This seems to relate solely to comments the magistrate made in explaining why she found the testimony of Espinoza's wife, who testified concerning his limited ability with the English language, not credible. We find no error on this record. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} One evening in Dayton, in May, 2006, at about 8:30, an undercover police officer, Amber Hall, was serving as a decoy prostitute. Espinoza pulled up in his truck to where she was standing, and told her to come over. Hall obliged, and asked Espinoza, "what's up?"
 {¶ 4} Espinoza asked Hall what she was doing. She said she was "just hanging out." Hall asked Espinoza if he was looking for anything. He replied, "yeah, you." Hall asked Espinoza what did he want, to which Espinoza replied, "everything." Hall testified that in this context "everything" means vaginal, anal and oral sex.
 {¶ 5} Hall asked Espinoza, "What's in it for me?" Espinoza replied, "money." Hall said, "What do you want again?" Espinoza said, "sex." Hall said, "sex for twenty dollars," and Espinoza said, "get in." *Page 3 
 {¶ 6} Hall told Espinoza to pull around to an alley, because she did not want to get in his truck on the street. During this entire exchange, Hall and Espinoza spoke exclusively in English. Hall testified that she had no trouble understanding Espinoza, and that he did not appear to have any difficulty understanding her.
 {¶ 7} After Hall told Espinoza to pull around to the alley, she walked away from his truck and gave a pre-determined "take-down" sign. She was met by a car that came to pick her up, and got in the car. She did not look to see whether Espinoza went to the designated alley. Hall testified that after the extraction car came to pick her up, "they began to push his car out of the area and then make a traffic stop on the vehicle." It is not clear whether in this part of her testimony Hall was testifying as to what she actually observed, or whether she was testifying to the normal procedure that is followed.
 {¶ 8} In any event, Espinoza was stopped, without having entered the designated alley. Rodney Barrett, a Dayton police officer, stopped Espinoza and administered warnings under Miranda v. Arizona (1966), 384 U.S. 436. Another Dayton police officer, William Knight, was present when Barrett Mirandized Espinoza, and testified that the entire conversation with Espinoza was in English, that he had no trouble understanding Espinoza, and that Espinoza did not appear to have any trouble understanding the officers.
 {¶ 9} Espinoza's wife, Misty, testified concerning Espinoza's limited ability with English. She also testified that he had left the house, before he was arrested, for the announced purpose of obtaining diapers at a nearby Kroger store in their neighborhood. Knight testified that during Espinoza's conversation with Knight and Barrett concerning his activities and his interaction with Hall, Espinoza never mentioned *Page 4 
that he was on an errand involving diapers or shopping.
 {¶ 10} The trial court found Espinoza guilty of both Soliciting and Loitering, and he was sentenced accordingly. From his conviction and sentence, Espinoza appeals.
 II {¶ 11} Espinoza's First Assignment of Error is as follows:
 {¶ 12} "THE APPELLANT'S CONVICTIONS FOR SOLICITATION AND LOITERING TO SOLICIT ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Soliciting is proscribed by R.C. 2907.24(A), as follows:
 {¶ 14} "No person shall solicit another to engage in sexual activity for hire."
 {¶ 15} Loitering to Solicit is proscribed by R.C. 2907.241(A), as follows:
 {¶ 16} "No person with purpose to solicit another to engage in sexual activity for hire shall do any of the following:
 {¶ 17} "(1) Beckon to, stop, or attempt to stop another. . . ."
 {¶ 18} Espinoza admits that he expressed an interest in having sexual relations with Hall, but denies that he proposed sexual activity for hire. He contends that the evidence supports at most a finding that he sought "gratuitous" sex with Hall, and that she, not he, introduced the concept of compensation when she asked, "What's in it for me?"
 {¶ 19} Espinoza cites State v. Son (December 11, 1998), Trumbull App. No. 98-T-0019. In that case, an undercover police officer went into a massage parlor and contracted to receive a 40-minute massage for $40. Another woman, not the woman *Page 5 
with whom the police officer dealt originally, administered the massage. The police officer was nude. During the massage, the masseuse began performing a sexual act upon the police officer. The masseuse was convicted of Soliciting. Her conviction was reversed on appeal, because there was no evidence that it was ever proposed that the sexual act she performed was to be performed for compensation. The evidence established merely that a massage was contracted for, and the defendant gratuitously began to perform a sexual act during the massage.
 {¶ 20} In the case before us, although Hall was the first to introduce the concept of consideration for the sexual act, when she asked, "what's in it for me," the parties had not reached agreement that a sexual act would be performed, gratuitously or otherwise, when Espinoza responded to Hall's question by proposing that he would pay "money" for the sexual act. In our view, this was a solicitation by Espinoza, to Hall, to engage in sexual activity for hire, both for purposes of Soliciting and of Loitering to Solicit.
 {¶ 21} Hall's testimony was both inherently credible, and unrebutted, that Espinoza proposed that he would pay her money in exchange for sexual activity. We conclude, therefore, that Espinoza's convictions for both Soliciting and Loitering to Solicit are neither against the manifest weight of the evidence nor unsupported by the evidence.
 {¶ 22} Espinoza's First Assignment of Error is overruled.
 III {¶ 23} Espinoza's Second Assignment of Error is as follows: *Page 6 
 {¶ 24} "THE COURT ERRED BY RELYING ON FACTS NOT IN EVIDENCE AND IN MAKING INFERENCES NOT SUPPORTED BY THE EVIDENCE."
 {¶ 25} Espinoza's entire argument in support of this assignment of error is as follows:
 {¶ 26} "The Appellant refers the Court to the magistrate's comments on the relationship of the Appellant and his wife and their language differences. The Court relied on unsupported speculation in arriving at its verdict and thus this conviction must be reversed."
 {¶ 27} Espinoza's wife, Misty, testified in his defense. She was not present during his exchange with Hall, or during his conversation with officers Garrett and Knight. She testified that they had been married four months, that they had children, that she spoke some Spanish, and that she and her husband communicated in English "very little." She testified that whenever he initiated intimate relations, he used Spanish words to do so, not English words. Finally, she testified that when he left the house, before he was arrested, he left to get diapers for their son, at Krogers.
 {¶ 28} The statement by the magistrate to which Espinoza appears to be referring came immediately after both sides had finished their closing arguments, when the case was submitted to the magistrate for decision:
 {¶ 29} "The court does not believe for a moment that Mr. Espinoza cannot speak English and know the words for sex and money. I believe that his wife came into court in complete denial and just outright lied to the court. If she only speaks some Spanish and claims he only speaks some English I don't know what kind of relationship they *Page 7 
would have being married. I believe that he speaks more English than what he's letting on."
 {¶ 30} The magistrate continued by evaluating the rest of the evidence in the case.
 {¶ 31} There is, of course, evidence in the record, in the form of the testimony of Hall, Garrett, and Knight, from which the trial court could find that Espinoza was reasonably fluent in English, at least sufficiently fluent to have understood the significance of his conversation with Hall to the point of having the requisite intent to commit the offenses of which he was convicted.
 {¶ 32} The magistrate found Misty Espinoza's testimony not credible. As part of the magistrate's evaluation of Misty Espinoza's lack of credibility, she found Misty's testimony concerning her husband's limited ability with English to be less credible in view of their married relationship. In our view, that was a reasonable inference for the magistrate to consider in evaluating Misty Espinoza's credibility.
 {¶ 33} Espinoza's Second Assignment of Error is overruled.
 IV {¶ 34} Both of Espinoza's assignments of error having been overruled, the judgment of the trial court is Affirmed.
 BROGAN and DONOVAN, JJ., concur. *Page 8 
Copies mailed to:
Patrick J. Bonfield
Deirdre E. Logan
Addie J. King
George A. Katchmer
 Hon. John S. Pickrel *Page 1